UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| DANIELLE DONOHUE and<br>LINCOLNSHOUSE, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF METHUEN and<br>JOHN P. GIBNEY,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 18-10713-LTS |

ORDER ON MOTION FOR PRELIMINARY INJUNCTION

November 21, 2018

SOROKIN, J.

On August 16, 2018, plaintiffs Danielle Donohue and Lincolnshouse, LLC ("Lincolnshouse") moved for a preliminary injunction against defendants City of Methuen ("the City") and John. P. Gibney. Doc. No. 14. The defendants opposed, Doc. No. 21, to which the plaintiffs replied, Doc. No. 23.

I.   FACTS

In October 2017, Donahue purchased the property at 10 Quincy Street in Methuen. Doc. No. 5 ¶ 7. In December 2017, Lincolnshouse began operating a sober house at the property. Id. ¶ 8. Shortly thereafter, the City began receiving complaints from the property's neighbors about its use as a sober house. Id. ¶ 10. After inspecting the property, on February 21, 2018, city officials sent Donohue a letter ordering her to cease and desist the operation of the sober house. Doc. No. 5-1. The letter alleged that the sober house was in violation of the local zoning ordinance, the state Building Code, and the state Sanitary Code because it lacked fire and smoke

protection features and means of egress sufficient for the number of people occupying the property. Id.

Lincolnshouse responded to the letter on February 22, stating its position that Massachusetts law requires that the sober house, because it is a "group of disabled individuals living together," must "be treated the same as a single-family for purposes of code, zoning, and fire safety laws." Doc. No. 5-2 at 1. On March 23, the City sent Donohue another letter informing her that it would evaluate her claims only if she applied for a building permit and that fines of $300 per day would otherwise begin to accrue on March 26. Doc. No. 5-3.

Lincolnshouse timely appealed the second letter to the Building Code Appeals Board ("the BCAB"), a state agency that hears appeals from Building Code enforcement decisions, which held a hearing on May 3, 2018. Doc. No. 16 ¶ 14; see Mass. Gen. Laws ch. 143, § 100. On July 18, the BCAB issued a decision upholding the City's letter.[1] Doc. No. 16-5. The plaintiffs appealed that decision into state court on August 20, 2018. Doc. No. 23 at 5.

On April 13, 2018, the plaintiffs brought this suit. Doc. No. 1. Their Amended Complaint, which states several state law claims and a claim under the federal Fair Housing Act, 42 U.S.C. § 3601 et seq., seeks damages and an injunction against the defendants. Doc. No. 5 at 7–10. The plaintiffs also moved for a preliminary injunction to prevent the defendants from "taking any action against [plaintiffs'] property . . . that is inconsistent with code, safety or zoning requirements that would be imposed upon a single-family occupancy with the same

---

[1] The BCAB decision reports that "testimony described" the property as a "large single-family home that once housed 34 nuns." Doc. No. 16-5 at 3. At the November 19, 2018, hearing on this motion, the Methuen City Solicitor represented that he had no idea whether nuns had previously used the house. Although the Court need not resolve the property's prior use, as it is irrelevant to the questions currently before the Court, the Court notes that a simple Google search for the address of the property shows "Presentation of Mary Convent" at that address. See Google (November 21, 2018, 1:52 p.m.), https://google.com/search?q=10+quincy+street+methuen+ma.

number of occupants." Doc. No. 14 at 1–2. The parties attended a mediation conducted by a United States Magistrate Judge from this Court in September but did not reach a settlement. Doc. No. 31. The Court held a hearing on the motion for preliminary injunction on November 19.

II. LEGAL STANDARD

"In determining whether to grant a preliminary injunction, the district court must consider: (i) the movant's likelihood of success on the merits of its claims; (ii) whether and to what extent the movant will suffer irreparable harm if the injunction is withheld; (iii) the balance of hardships as between the parties; and (iv) the effect, if any, that an injunction (or the withholding of one) may have on the public interest." Corp. Techs., Inc. v. Harnett, 731 F.3d 6, 9 (1st Cir. 2013). "The party seeking the preliminary injunction bears the burden of establishing that these four factors weigh in its favor." Esso Standard Oil Co. (P.R.) v. Monroig-Zayas, 445 F.3d 13, 18 (1st Cir. 2006).

III. DISCUSSION

The plaintiffs contend that the defendants' application of the state Building Code to their property constitutes unlawful discrimination because the City has imposed requirements on their use of the property that it would not impose on a single-family home. Doc. No. 15 at 8. The plaintiffs argue that such requirements violate the Massachusetts Zoning Act, Mass. Gen. Laws ch. 40A, § 3 ("the Zoning Act"), which provides in relevant part that

> [n]otwithstanding any general or special law to the contrary, local land use and health and safety laws, regulations, practices, ordinances, by-laws and decisions of a city or town shall not discriminate against a disabled person. Imposition of health and safety laws or land-use requirements on congregate living arrangements among non-related persons with disabilities that are not imposed on families and groups of similar size or other unrelated persons shall constitute discrimination. The provisions of this paragraph shall apply to every city or town, including, but not limited to the city of Boston and the city of Cambridge.

3

The plaintiffs argue that this provision preempts the state Building Code insofar as its application to the sober house as a "congregate living arrangement[] among non-related persons with disabilities" differs from its application to "families and groups of similar size." Doc. No. 15 at 8. Defendants disagree and argue that this provision of the Zoning Act "has no such universal preclusive effect." Doc. No. 22 at 10.

The defendants further argue that this Court may not review the plaintiffs' claims because it must give preclusive effect to the earlier BCAB decision. Id. at 7. Federal courts consider the preclusive effect of state court judgment using the preclusion principles of that state. Goldstein v. Galvin, 719 F.3d 16, 22–23 (1st Cir. 2013). "Under Massachusetts law, 'claim preclusion makes a valid, final judgment conclusive on the parties and their privies, and prevents relitigation of all matters that were or could have been adjudicated in the action.'" Id. at 22–23 (quoting Kobrin v. Bd. of Regist. in Med., 832 N.E.2d 628, 634 (Mass. 2005)). "It is based on the idea that the party to be precluded has had the incentive and opportunity to litigate the matter fully in the first lawsuit." O'Neill v. City Manager of Cambridge, 700 N.E.2d 530, 532 (Mass. 1998). Issue preclusion, on the other hand, "prevents relitigation of an issue determined in an earlier action where the same issue arises in a later action, based on a different claim, between the same parties or their privies." Kobrin, 832 N.E.2d at 634. It "can be used only to prevent relitigation of issues actually litigated in the prior action." Id.

Neither claim preclusion nor issue preclusion prevents the plaintiffs from bringing their claims to this Court. Under Massachusetts law claim preclusion bars only claims that "could have been" litigated in the prior proceeding—here, the adjudicatory hearing before the BCAB. The Commonwealth established the BCAB to hear appeals regarding "the administration or enforcement of the state building code." Mass. Gen. Laws ch. 143, § 100. The Commonwealth

4

did not vest BCAB with authority to apply the Zoning Act or to resolve civil rights claims or federal claims. Id. The Massachusetts Appeals Court has determined that BCAB's "jurisdiction is limited to issues involving the administration and enforcement of the State building code." Bd. of Appeals of Rockport v. DeCarolis, 588 N.E.2d 1378, 1382 (Mass. App. Ct. 1992). The BCAB itself is well aware of the limits of its jurisdiction. In its decision on the plaintiffs' appeal, the BCAB stated that it did "not have the authority to apply G. L. c. 40A, 'The Zoning Act,' to requirements set forth in" the Building Code. Doc. No. 16-5 at 8–9. That the BCAB, after disclaiming jurisdiction to resolve the Zoning Act issues, proceeded to do just that provides no basis to bar any of the plaintiffs' claim under the doctrine of claim preclusion. Notably, the defendants cite no case or other basis for the propositions that claim preclusion may bar claims that could not have been brought or that the BCAB could have heard these claims.

Similarly, the extrajurisdictional dicta in the BCAB decision does not give rise to issue preclusion on the questions of whether the Zoning Act preempts the City's application of the state Building Code to the defendants' property, whether defendants' actions constitute discrimination within the meaning of the Zoning Act, or whether the defendants violated the Federal Fair Housing Act. None of these determinations, even if commented upon by the BCAB, were "essential" to the BCAB's final judgment, for the reasons already stated, which is a requirement for the application of issue preclusion under Massachusetts law. Kobrin, 832 N.E.2d at 634.

On the merits of the plaintiffs' Zoning Act claim, they argue that the statutory language "notwithstanding any general or special law to the contrary" clearly reaches state statutes and requires the city to treat their sober house as it would treat a single-family home of the same size. Doc. No. 15 at 7. The defendants argue that the statute merely "provides a number of restrictions

5

on local zoning regulations" and does not reach the state Building Code. Doc. No. 22 at 10. Indeed, as its title suggests, much of the Zoning Act focuses on zoning, a traditionally local matter.

The defendants' interpretation of the Zoning Act is incorrect. "A fundamental tenet of statutory interpretation is that statutory language should be given effect consistent with its plain meaning and in light of the aim of the Legislature unless to do so would achieve an illogical result." Sullivan v. Town of Brookline, 758 N.E.2d 110, 115 (Mass. 2001). "[P]lain words in the text of a statute are not to be cut down by its title." Attorney Gen. v. Goldberg, 112 N.E.2d 926, 926–27 (Mass. 1953). "The words, 'Notwithstanding the provisions of any general or special law to the contrary,' announce that an indefinite number of unidentified statutory provisions, if inconsistent, are repealed to the extent necessary to make . . . effective" the statute within which the phrase appears. Mathewson v. Contributory Ret. Appeal Bd., 141 N.E.2d 522, 525 (Mass. 1957). The Zoning Act's use of that well-known phrase therefore establishes its effect on other state statutes regulating health and safety. Moreover, the law's use of the phrase "any general or special law" could not refer only to local ordinances and bylaws, which, unlike Massachusetts state statutes, are not referred to in those terms. Finally, because this provision of the Zoning Act "is a civil rights statute, we are required to construe its terms broadly." Thurdin v. SEI Boston, LLC, 895 N.E.2d 446, 458 (Mass. 2008). This provision of the Zoning Act serves to expand available housing for persons with disabilities by ensuring that they receive the same treatment as single families.

While the parties have cited no Supreme Judicial Court decisions[2] resolving the application of this Zoning Act provision to state health and safety laws, and the Court has found none, two other sessions of this Court have considered this question. Each determined that the Zoning Act barred the application of a state health and safety law to the extent the law applied to congregate living arrangements of non-related disabled persons differently than to single family residences with the same number of occupants. Brockton Fire Dep't v. St. Mary Broad St., LLC, 181 F. Supp. 3d 155, 157 (D. Mass. 2016) (holding that Chapter 40A "unequivocally prohibits the facially disparate imposition of the Sprinkler Law on a group residence sheltering disabled individuals"); Summers v. City of Fitchburg, No. 15-CV-13358-DJC, 2016 WL 4926415, at *7 (D. Mass. Sept. 15, 2016) (concurring).

This Court concurs with these two decisions and determines that the plain language of the Zoning Act bars the application of the State Building Code to the plaintiffs. Like the Sprinkler Law at issue in the cited cases, the state Building Code is, on its face, a "health and safety law" within the meaning of Mass. Gen. Laws ch. 40A, § 3. See Trustees of Cambridge Point Condo. Tr. v. Cambridge Point, LLC, 88 N.E.3d 1142, 1152 (Mass. 2018) ("The purpose of the building code 'is to establish the minimum requirements to safeguard the public health, safety, and general welfare.'") (quoting 780 Code Mass. Regs. § 101.3). The defendants do not dispute this, nor do they advance any argument that the application of Chapter 40A to the Building Code would differ from its application to the Sprinkler Law.

The Zoning Act defines discrimination as the "[i]mposition of health and safety laws . . . on congregate living arrangements among non-related persons with disabilities that are not

---

[2] The same applies to Massachusetts Appeals Court and Superior Court decisions, to which this Court looks for persuasive guidance.

imposed on families and groups of similar size or other unrelated persons." Mass. Gen. Laws ch. 40A, § 3. The City takes the position that the plaintiffs must apply for a building permit and make safety improvements to their property, although a single family with the same number of occupants would be able to occupy the property without doing so. This requirement, on its face, violates the Zoning Act. Plaintiffs have therefore demonstrated a likelihood of success on the merits. Given this determination, the Court need not address the Fair Housing Act claim at this stage of the proceedings.

Without a preliminary injunction, the plaintiffs face the risk that they could be forced to vacate the property or face significant financial penalties imposed by the City. Homelessness is a possibility for some of the property's residents if forced to vacate, presenting the possibility of irreparable harm. The City does not argue that allowing the plaintiffs' current use of their property creates a hardship for the City, instead focusing on the hardship to the plaintiffs created by the property's lack of safety features. Although the public interest in ensuring the physical safety of the City's residents is significant, there is also significant public interest in providing housing to people with disabilities and treatment for individuals suffering from drug addiction.[3] By determining that unrelated disabled persons are entitled to the benefit of the same rules applicable to families, the Commonwealth has decidedly tipped this weighing in the plaintiffs' favor.

For the foregoing reasons, the plaintiffs have demonstrated a likelihood of success on the merits and a likelihood of irreparable harm if the injunction is withheld. They have also demonstrated that the balance of hardships and the public interest favors the issuance of an

---

[3] The Court notes that residents of the home are required to submit to random drug tests, which itself helps many addicts remain sober.

injunction. Accordingly, the Court preliminarily ENJOINS the defendants from taking further actions to enforce health or safety laws, including the state Building Code, against the property at 10 Quincy Street, Methuen, in a way that would not apply to a single-family home with the same number of occupants.

The parties shall file a joint status report stating each party's proposal for the schedule for the remainder of this litigation by December 7, 2018.

SO ORDERED.

 /s/ Leo T. Sorokin
Leo T. Sorokin
United States District Judge